IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AJA N., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UPPER MERION AREA SCHOOL | : | |
| DISTRICT | : | NO. 21-4234 |

**MEMORANDUM**

**Padova, J.**                                                          **August 16, 2022**

Plaintiffs Aja N. and Richard H., individually and on behalf of their child J.H., filed this

action under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the

Rehabilitation Act ("Section 504"), and Title II of the Americans with Disabilities Act ("ADA"),

to enforce in part and challenge in part the decision of a Pennsylvania Special Education Hearing

Officer.  Plaintiffs and Defendant Upper Merion Area School District (the "District") have filed

Motions for Judgment on the Administrative Record.  For the reasons that follow, we deny

Defendant's Motion, grant Plaintiffs' Motion, and enter judgment in favor of Plaintiffs.

**I.      BACKGROUND**

J.H. "suffered a hemorrhagic stroke and seizure" shortly after his birth that caused him to

be disabled, impacting his "memory, receptive language, and executive functioning."  (Hearing

Officer's Decision ("H.O. Dec.") (Docket No. 15-3) at 2 (citations omitted).)[1]  J.H. was found to

be eligible for special education services prior to starting kindergarten under the IDEA based on

diagnoses of Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder.  (Id.

(citation omitted).)

---

[1] "Factual findings from the administrative proceedings are to be considered prima facie
correct."  Ridley Sch. Dist. v. M.R., 680 F.3d 260, 268 (3d Cir. 2012) (quotation omitted).
Additionally, here neither party has challenged the Hearing Officer's findings of fact.
Accordingly, we accept the Hearing Officer's findings of fact as correct.

J.H. remained eligible for special education services through elementary school, middle school, and high school.  (Id. (citation omitted).)  J.H. did well during his early school years "when academic tasks were more concrete . . . but [a]s school tasks became more complex, and as students were expected to become more independent, [J.H.] had great difficulty keeping up with demands." (Id. at 5 (second alteration in original) (quotations omitted).)

"In middle school, the learning gap [between J.H. and other students] appeared to broaden . . . [and J.H.] began struggling."  (H.O. Dec. at 5.)  In spite of this, the District "proposed more mainstreamed and co-taught classes."  (Id. (citation omitted).)  J.H. had "trouble keeping up, and . . . was easily overwhelmed despite having an [Individualized Education Plan ("IEP")] and a mobile therapist."  (Educ. Consultant Evaluation (Docket No. 15-13) at 244 of 400.)

According to J.H.'s IEP covering the end of his 8th grade year through 9th grade, J.H. was moved from an "itinerant learning support" program to a "supplemental learning support program."  (2018 Notice of Recommended ("Rec'd") Educ. Placement (Docket No. 15-12) at 101 of 391; see also Feb. 2020 IEP Revision (Docket No. 15-12), at 190 of 391 (identifying "itinerant" support as the lowest level of special education support, "supplemental" support as a middle level of support, and "full-time" support as the highest level).)  Beginning in ninth grade, the District placed J.H. in special education classes for English, History, Math, and Study Skills, while he was placed in "a regular educational environment for . . . teen issues, digital academy, science and tech, and [e]lectives."  (2018 Notice of Rec'd Educ. Placement at 101 of 391.)

J.H.'s IEP covering the end of 9th grade through 10th grade placed him in special education courses for Study Skills, Social Studies, Math and English.  (See H.O. Dec. at 2-3 (citation omitted).)  J.H. was placed in a Math course "focus[ed]" on Algebra I (2019 IEP (Docket No. 15-12) at 167 of 391) in spite of the fact that he had not yet "mastered prerequisite concepts" (H.O.

Dec. at 5 (quotation omitted)).  For this reason, it was "highly unlikely that [J.H.] could access the Pre-Algebra and Algebra curricula" provided by the District.  (Id.)  Furthermore, J.H.'s "reading level was at times two to three grades lower than the curricula taught in the English Language Arts classes in which [J.H.] was placed by the school."  (Id. at 6.)  In both his Math and reading classes, class sizes ranged between nine and fifteen students, "which although smaller than regular education classes[,] did not provide [J.H.] with the individualized attention needed to progress." (Id.)  J.H.'s 2019 IEP also included half days of instruction at a local "Technical High School" for its public safety program.  (2019 IEP at 173 of 391.)  In spite of requests by J.H.'s parents, the 2019 IEP did not provide for Extended School Year Services ("ESY") over the summer of 2019. (Id. at 187 of 391; Educ. Consultant Evaluation at 244 of 400.)  In 2019, J.H.'s parents enrolled J.H. in tutoring services at the Huntington Learning Center and the Fusion Academy, concerned by J.H.'s apparent lack of educational progress.  (See H.O. Dec. at 3-5.)

J.H. received a new IEP in April 2020 that would cover the end of 10th grade through 11th grade.  (Id. at 3.)  The April 2020 IEP included ESY over the summer based on J.H.'s "demonstrated difficulties with regression/recoupment and mastery of math and ELA skills." (April 2020 IEP (Docket No. 15-12) at 249 of 391; see also H.O. Dec. at 3 (citation omitted).) However, instead of enrolling J.H. in ESY during the summer of 2020, Plaintiffs enrolled him at the Fusion Academy for "23 sessions of tutoring and mentoring."  (H.O. Dec. at 3.)  The April 2020 IEP also changed J.H.'s instruction at the local technical high school from the public safety course to a course on "Visual, Sound, and Music Production" (April 2020 IEP at 232 of 391) due to J.H.'s lack of interest in the public safety course and reported bullying incidents that took place during the public safety course (Educ. Consultant Evaluation at 245-46 of 400).  J.H.'s parents, however, reported that the new program was "well over [J.H.'s] head, requiring extensive self-

learning and a great deal of organization and creativity in order to master the material." (Id. at 246 of 400.)

At this point, in creating J.H.'s IEPs, the District relied on information based on record reviews and not new tests or evaluations.  (2020 Notice of Rec'd Educ. Placement (Docket No. 15-12) at 262 of 391 (identifying reports and data relied upon to create J.H.'s IEP).)  "IEPs based on record reviews can tend to become stale when they continue to regurgitate old information." (H.O. Dec. at 14.)  For example, J.H.'s April 2020 IEP mentioned behavioral issues (April 2020 IEP at 224 of 391), even though J.H. no longer exhibited these problems.  (Neuropsychologist Evaluation (Docket No. 15-13) at 198 of 400; see also Educ. Consultant Evaluation at 245 of 400 (stating that J.H.'s mother "reports no behavior problems with [J.H.] other than rigidity/resistance to change.").)  Rather, J.H. had "cognitive, language, and memory retrieval problems," and all of his "instruction should [have been] designed with these impairments in mind." (Neuropsychologist Evaluation at 198 of 400.)

In October 2020, J.H.'s mother informed the school she planned to enroll J.H. "in a private school at the District's expense because she did not believe that the District was meeting her child's educational needs."  (H.O Dec. at 3; Aja N. email, 10/8/2020 (Docket No. 15-13) at 43 of 400.)  The District convened an IEP meeting on October 14, 2020, and thereafter revised J.H.'s IEP. (H.O. Dec. at 3.)  On February 12, 2021, J.H.'s parents enrolled J.H. in The Concept School ("TCS"), "a private school for students in grades 6-12 who learn differently."  (Id. at 4.)  By this point, J.H.'s parents had hired multiple experts—an educational consultant, a neuropsychologist, and a speech and language specialist—to develop and provide evaluations of J.H.'s educational and psychological development.  (Id. at 4.)   J.H.'s parents provided both the District and TCS with evaluations compiled by these experts by the end of January 2021.  (See Moody Testimony

(Docket No. 15-6), at 1695; Bennett Testimony (Docket No. 15-8) at 1042-43 (discussing two of the three evaluations).)  The evaluation completed by the education consultant stated in pertinent part: "[the Student's] IEPs and placements have not fully acknowledged the scope of disabilities, and have therefore not been able to address his deficits."  (Educ. Consultant Evaluation at 274 of 400.)  The evaluation further states that "the IEPs do not recognize or address [J.H.'s] significant speech and language deficits . . . [They] do not recognize his reading deficits and do not address them.  They do not recognize his executive functions deficits and do not address them.  They do not recognize his working memory delays and do not address them."  (Id.)

On December 24, 2021, J.H.'s parents filed a complaint with a Pennsylvania Special Education Hearing Officer, "alleging a denial of a [Free Acceptable Public Education ("FAPE")]."  (H.O. Dec. at 4.)  They sought compensatory education and also reimbursement for the cost of the speech and language specialist's evaluation, tutoring and mentoring, and private school tuition.  (Id.)  On July 9, 2021, the Pennsylvania Special Education Hearing Officer ("Hearing Officer") concluded that the IEPs covering the period from December 24, 2018, through February 12, 2021, were deficient in reading, writing, and math, insofar as the school placed J.H. in "classes that were several years above the Student's comprehension level crippling the Student's ability to comprehend the curricula and progress, despite the School's progress reports which, in light of the evidence, are called into question."  (Id. at 12.)  The Hearing Officer further concluded that "the District did not accommodate the Student's needs for multisensory education and small classrooms. The special education classes consisted of about 9-15 students and the regular education classes were even larger."  (Id. at 13.)  Overall, the Hearing Officer found that J.H.'s "IEPs fell short of IDEA mandates, resulting in a substantive denial of FAPE."  (Id. at 14.)  The Hearing Officer also found all of the witnesses to be credible, and "[i]n particular, the Parents'

expert witnesses who provided detailed assessments of the Student, were credible and not biased towards the Parents . . . ." (Id. at 10.)

The Hearing Officer awarded J.H compensatory education of: "5.5 hours for each day the District high school was in session from December 24, 2018, through February 11, 2021, and . . . ESY . . . for the summer of 2019 when the District did not place the Student in ESY." (Id. at 20.) The Hearing Officer also awarded reimbursement for the cost of the evaluations obtained by the parents and for private school tuition from February 12 through June 17, 2021. (Id. at 22.) The Hearing Officer denied reimbursement for "[t]he private school the Parents unilaterally placed the Student during the summer of 2020 when there was an offer of ESY in the IEP," for "[t]utoring and mentoring services," and for one of the evaluations obtained by the parents. (Id.) The Hearing Officer denied reimbursement for private school tuition and tutoring and mentoring services for the summer of 2020 as she had awarded compensatory education for those periods and the award of compensatory education was "intended to fully remedy the deprivation of FAPE for the time period in question." (Id. at 21-22.)

On September 27, 2021, Plaintiffs filed a Complaint in this Court seeking affirmance of part of the Hearing Officer's decision (Count I), appealing part of the Hearing Officer's decision (Count II), and requesting attorney's fees and costs (Count III). In its Answer, the District asserted a counterclaim appealing the Hearing Officer's decision. Plaintiffs and the District have since filed Motions for Judgment on the Administrative Record. In addition to asking us to affirm the Hearing Officer's decision, Plaintiffs also ask us to order compensatory education for ESY for the summer of 2020.[2] The District asks us to reverse the Hearing Officer's decision with regard to the

_____

[2] In their Complaint, Plaintiffs also ask for "an immediate order requiring the District to fund the ongoing costs of The Concept School and to provide transportation to and from The Concept School during the pendency of these proceedings." (Compl. ¶ 88.) The District has

following:  1) the award of compensatory education during the COVID-19 pandemic when the District curtailed academic services for all students, 2) the award of compensatory education for time when J.H. attended programs at the local Technical High School, 3) the award of full days of compensatory education for ESY for the summer of 2019, and 4) the tuition reimbursement for private school.

## II.    LEGAL STANDARD

"When considering a petition for review challenging a state administrative decision under the IDEA, a district court applies 'a nontraditional standard of review, sometimes referred to as "modified de novo" review.'"  Ridley Sch. Dist. v. M.R., 680 F.3d 260, 268 (3d Cir. 2012) (quoting D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010)).  "Under this standard, a district court must give 'due weight' to the findings of the state hearing officer."  Id. (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)).  "Factual findings from the administrative proceedings are to be considered prima facie correct. If a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities."  Id. (quoting S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003)).  Moreover, "if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight."  Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (citing S.H., 336 F.3d at 270; Carlisle Area Sch. v. Scott P., 62 F.3d 520, 527-29 (3d Cir. 1995)); see also id. at 201 ("[T]he task of evaluating their conflicting opinions lay in the first instance with the ALJ in whose presence

---

informed us that it intends to pay the cost of J.H.'s attendance at TCS for the upcoming school year.  (Defendant's email of 6/7/2020.)  Accordingly, we do not address this issue here.

they testified."). Thus, we "must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" Id. at 199 (emphasis omitted) (quoting Carlisle Area Sch., 62 F.3d at 529). Furthermore, "the party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged." Ridley Sch. Dist., 680 F.3d at 270 (citations omitted). "Within the confines of these standards, a district court is authorized to make findings based on the preponderance of the evidence and grant the relief it deems appropriate." Id. at 268 (quoting D.S., 602 F.3d at 564). "These remedies include, *inter alia*, attorneys' fees, reimbursement for a private educational placement, and compensatory education." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (quotation omitted).

## III.   DISCUSSION

### A.  The Hearing Officer's Decision That J.H. is Not Entitled to Compensatory Education for ESY for the summer of 2020

Plaintiffs appeal the Hearing Officer's determination that J.H. is not entitled to compensatory education for the time he was offered ESY for the summer of 2020. They suggest that the Hearing Officer's decision not to award compensatory education during this time period may have been an oversight because the Hearing Officer awarded compensatory education to J.H. "for each day the District high school was in session from December 24, 2018 through February 11, 2021" and the District high school was in a session for ESY for the summer of 2020. (H.O. Dec. at 20.) The District argues that J.H. is not entitled to compensatory education for ESY for the summer of 2020 because the Hearing Officer *awarded* reimbursement of private school expenses for this time period, and J.H. is not entitled to compensatory education for the same time period. See, e.g. Breanne C. v. S. York Cty. Sch. Dist., 732 F. Supp. 2d 474, 488 (M.D. Pa. 2010) (agreeing that awarding reimbursement for tutoring as well as compensatory education would be

"double-dipping" and noting that plaintiffs "cannot expect to get the benefit of reimbursement of tutoring that was designed to address the educational deficiencies of the school district *and* a compensatory education award that is designed to remedy these same deficiencies")

Based on a thorough review of the Hearing Officer's decision, we find that the Hearing Officer did, in fact, award compensatory education for ESY for the summer of 2020. The Hearing Officer found that J.H.'s IEPs "fell short of IDEA mandates, resulting in a substantive denial of FAPE." (H.O. Dec. at 14.) The Hearing Officer therefore awarded J.H. "compensatory education . . . for each day the District high school was in session from December 24, 2018 through February 11, 2021." (Id. at 20.) The District high school was in session for ESY for the summer of 2020. (See 2020 IEP at 249 of 391 (offering J.H. ESY instruction for the summer of 2020).) Accordingly, as the time period of December 2018 to February 2021 includes the summer of 2020, we conclude that the Hearing Officer awarded compensatory education for ESY for the summer of 2020.[3] Plaintiffs are entitled to this award, and we therefore grant Plaintiffs' Motion with respect to this argument and deny the District's Motion with respect to this argument.

B. The Award of Compensatory Education During the COVID-19 Pandemic When the District Offered Limited Instruction

The District appeals the Hearing Officer's award of compensatory education for the time period in which the District offered only virtual school attendance and/or curtailed education programs due to the COVID-19 pandemic. Plaintiffs ask us to affirm the Hearing Officer's award for the same period.

---

[3] In fact, the Hearing Officer, acknowledging that a student cannot be eligible for compensatory education and monetary reimbursement for tutoring for the same period of time, specifically declined to reimburse J.H. for his private school and tutoring expenses during the summer of 2020. (H.O. Dec. at 21-22.)

Specifically, the District argues that, insofar as it curtailed its instruction for all students due to the COVID-19 Pandemic, United States Department of Education guidance issued in March 2020 exempted it from following J.H.'s IEP and/or providing J.H. a FAPE during this time period. In March 2020, the Department of Education issued interim help to school administrators to plan for the spread of COVID-19.  In its Questions and Answers on Providing Services to Children with Disabilities during the Coronavirus Disease 2019 Outbreak, the Department stated: "[i]f a[ District] closes its schools to slow or stop the spread of COVID-19, and does not provide any educational services to the general student population, then [it] . . . would not be required to provide services to students with disabilities during that same period of time."  U.S. Dep't of Educ., Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak (March 2020) at 2, https://sites.ed.gov/idea/files/qa-covid-19-03-12-2020.pdf; see also Hernandez v. Grisham, 508 F. Supp. 3d 893, 920 (D.N.M. 2020) (quoting the New Mexico Public Education Department's summary of the first U.S. Department of Education guidance as: "if Schools do not provide any education services to the general student population during the school closure, then it would not be required to provide services to student with disabilities during the school closure." (quotation omitted)).

However, the Department of Education clarified this guidance shortly after its issuance. On March 21, 2020, new guidance was issued to correct the "serious misunderstanding" that "federal disability law presents insurmountable barriers to remote education."  U.S. Dep't of Educ., Supplemental Fact Sheet 1 (Mar. 21, 2020), https://www2.ed.gov/about/offices/list/ocr/frontpage/ faq/rr/policyguidance/Supple%20Fact%20Sheet%203.21.20%20FINAL.pdf.  The new guidance stated that "schools should not opt to close or decline to provide distance instruction, at the expense of students, to address matters pertaining to services for students with disabilities."  Id.  It further

clarified that: "[t]o be clear: ensuring compliance with the Individuals with [IDEA, Section 504, and the ADA] . . . should not prevent any school from offering educational programs through distance instruction." Id. (emphasis omitted).  Overall, the guidance emphasized that, while the provision of a FAPE may be flexible during times of national crisis, nevertheless "[s]chool districts *must* provide a . . . (FAPE) consistent with the need to protect the health and safety of students with disabilities and those individuals providing education, specialized instruction, and related services to these students." Id.  Therefore, we understand that the Department of Education required schools, to the greatest extent possible, to provide FAPEs to students with IEPs even during time periods of curtailed instruction during the COVID-19 Pandemic.

Furthermore, even in times of emergency, the IDEA itself requires school districts to provide FAPEs to students with IEPs.  In Hernandez (a case cited by both parties), the United States District Court for the District of New Mexico weighed a school's argument that it need not provide in-person instruction during the COVID-19 Pandemic.  The court observed: "the IDEA [does not] create any emergency exception excusing funding recipients from delivering a FAPE to students with disabilities .  . . . the IDEA requires funding recipients to provide children with disabilities with a FAPE, even if that means providing in-person learning during a pandemic." Id. at 1005 (citing 20 U.S.C. § 1401(9)); accord 34 C.F.R. § 300.101(a) ("A free appropriate public education *must* be available to all children residing in the State between the ages of 3 and 21, inclusive . . . ." (emphasis added)).  Accordingly, because neither the IDEA nor Department of Education guidance exempts schools from providing FAPEs to students with IEPs during the COVID-19 Pandemic, we conclude that the District was not exempted from delivering a FAPE to J.H.  Therefore, we deny the District's Motion with respect to this argument, grant Plaintiffs' Motion with respect to this argument, and therefore affirm the Hearing Officer's decision with

11

respect to the award of compensatory education during the COVID-19 Pandemic when the District

offered limited instruction.

C. The Award of Compensatory Education for J.H.'s Courses at the Technical High
School

The District appeals the Hearing Officer's award of full days of compensatory education

for the days in which J.H. had instruction at the local technical high school.  Plaintiffs ask us to

affirm the Hearing Officer's decision with respect to the award of full days of compensatory

education.

The District argues that the Hearing Officer failed to include any findings of fact in her

decision that would support a determination that J.H.'s vocational instruction at the technical high

school did not provide him with a FAPE and also contends that neither party offered evidence or

testimony during the Due Process Hearing that would support a determination that the vocational

education program failed to meet J.H.'s educational needs.  In fact, the District argues, the most

relevant record evidence supports the opposite proposition, i.e., that J.H. *did well* in the technical

program.  (See, e.g. 2019 IEP, at 229 of 391 (stating that J.H. "has transitioned well to participating

in the half-day tech program at [the technical high school]. He is making effective progress in that

program which is aligned with his transition plan . . . .").)

The Hearing Officer made the following findings that we consider to be relevant to J.H.'s

instruction at the Technical High School.  First, the Hearing Officer found that classes of 9-15

students "did not provide [J.H.] with the individualized attention needed to progress."  (H.O. Dec.

at 6.)  Second, the Hearing Officer found that J.H.'s IEPs, including his 2019 IEP, "fell short of

IDEA mandates, resulting in a substantive denial of FAPE."  (H.O. Dec. at 14.)  In reaching this

conclusion, the Hearing Officer relied in part on the educational consultant's evaluation, which

stated that "the IEPs do not recognize or address [J.H.'s] significant speech and language deficits

. . . do not recognize . . . his reading deficits and do not address them.  They do not recognize his his executive functioning deficits and do not address them.  They do not recognize . . . working memory delays and do not address them."  (Educ. Consultant Evaluation at 274 of 400.)  We conclude that the above findings of fact are relevant to J.H.'s instruction at the Technical High School, and therefore we reject the District's argument that the Hearing Officer's conclusion was not supported by any findings of fact.

Furthermore, there is ample evidence in the record to support these findings as it pertains to J.H.'s instruction at the technical high school.  J.H.'s public safety teacher testified that he provided J.H. with only a few of his required special education accommodations during the public safety class. (Renzi Testimony (Docket No. 15-8) at 1094-100; 2019 IEP at 213-215 of 391 (identifying the full list of required accommodations)).  In fact, the public safety teacher had not reviewed J.H.'s IEP 20 days after the beginning of the 2019-2020 school year.  (Renzi Testimony at 1102.)  J.H.'s public safety teacher further testified that he had minimal contact with J.H. after the school went virtual in March 2020.  (Id. at 1121-1122.)  Even before then, the class consisted of 30 students, well over the 9-15 student range that the Hearing Officer concluded was too large to provide J.H. "individualized attention." (Renzi Testimony at 1091; H.O. Dec. at 6.) Additionally, J.H.'s father watched J.H. struggle with the course assignments during his Music, Sound, and Visual Production Course at the Technical High School during the 2020-2021 school year.  (Testimony of Richard H. (Docket No. 15-7), at 1347.)  On at least one occasion J.H.'s father did "pretty much the whole project" for J.H.   (Id.)   Dr. Herzel, the neuropsychologist who evaluated J.H., testified that "it seems as though the instruction was not modified or accommodated for [J.H.] . . . .  And so, you know, we can't leave the burden of doing the accommodations and modifications to his father.  So I would have to imagine that that was not appropriate."  (Herzel

Testimony (Docket No. 15-10) at 406.) Dr. Herzel further testified that those responsible for J.H.'s vocational training did not "ha[ve] an understanding of this student." (Id. at 408.)[4]

Consequently, we cannot agree with the District's argument that the Hearing Officer's determination that J.H.'s vocational education did not provide him with a FAPE is unsupported. Thus, as the District bears the burden of persuasion as to this claim, Ridley Sch. Dist., 680 F.3d at 270 (citations omitted), we deny the District's Motion with respect to this argument, grant Plaintiffs' Motion with respect to this argument, and affirm the Hearing Officer's award of full days of compensatory education for the days in which J.H. had instruction at the Technical High School.

### D.  The Award of Compensatory Education for ESY for the Summer of 2019

The District appeals the Hearing Officer's award of compensatory education for ESY for the summer of 2019 while Plaintiffs ask us to affirm the Hearing Officer's decision and award J.H. compensatory education for this period.  J.H.'s 2019 IEP did not include ESY instruction for the summer of 2019. (2019 IEP at 187 of 391.)  The District argues that "[t]he Hearing Officer's decision is devoid of any factual findings or explanation as to if, much less why, the Hearing Officer disagreed with the District's decision [not to award] . . . ESY [during] 2019." (Def.'s Br. (Docket No. 18-1) at 9 of 16.)  The District also argues that no evidence was presented during the due process hearing that would show that the District's ESY 2019 decision was improper.

Schools are required to use the following factors "in considering whether a student is eligible for ESY services," including: "regression," "recoupment," mastery of skills, and "self-

---

[4] The District argues that we should not consider Dr. Herzel's opinion because she relied solely on the opinions of J.H.'s parents.  However, Dr. Herzel testified that she also spoke to 1) individuals who ran the vocational program, 2) J.H.'s vocational teacher, and 3) the special education liaison.  (Herzel Testimony, at 406-08.)  Since it is clear that Dr. Herzel did not rely solely on the opinions of J.H.'s parents, we reject the District's argument that we should not consider Dr. Herzel's opinions.

sufficiency and independence." 22 Pa. Code. § 14.132(a)(2)(i-vii).  The Hearing Officer made the following findings of fact that we consider to be relevant to these factors.  First, the Hearing Officer found that, "[a]s school tasks became more complex, and as students were expected to become more independent, [J.H.] had great difficulty with demands."  (H.O. Dec. at 5.)  The Hearing Officer further found that, as the J.H. became older, "the learning gap appeared to broaden" between him and his peers.  (Id.)  Finally, the Hearing Officer found it was "highly unlikely that [J.H.] could access the [Math] curricula used in classes where [J.H.] was placed by the District," and that the "record also demonstrates that . . . [J.H.'s] reading level was at times two to three grades lower than the curricula taught in the English Language Arts classes in which [J.H.] was placed by the [District]."  (Id. at 5-6.)  At the very least, these findings are relevant to "recoupment," mastery of skills, and "self-sufficiency and independence."  22 Pa. Code. § 14.132(a)(2)(i-vii).  We therefore deny the District's Motion as to its argument that the Hearing Officer's decision lacks factual findings or explanation that support an award of compensatory education for ESY for the summer of 2019.

Furthermore, the Hearing Officer considered substantial record evidence at the Due Process Hearing that supported her award.  Dr. Herzel testified that it would be "reasonable" to expect J.H. to have "memory issues, recoupment issues, [and] regression issues," and that it was "inappropriate" for the District not to grant J.H. ESY in 2019.  (Herzel Testimony at 420-21.)  Dr. Hurewitz, the education consultant, testified that "J.H. definitely needs ESY, because he has a tendency to forget skills, to forget what he learns, and to regress in skills."  (Hurewitz Testimony (Docket No. 15-6), at 1523.)    Finally, the director of the Huntington Learning Center—the organization that provided tutoring to J.H. in 2019 and 2020—testified that she was "surprised [J.H.] didn't have ESY[,] . . . the staff at the school was also surprised that he did not qualify," and

that ESY would have been "very helpful" to him given his "need for repetition, [and] that his memory is very poor." (McDonald Testimony (Docket No. 15-9), at 709, 778.) Therefore, we find that evidence was presented at the Due Process Hearing to show that the District's ESY 2019 decision was improper, and we deny the District's Motion as to this argument.

Nevertheless, the District further asserts that, even if there were evidence presented that the District's determination was improper, there was no evidence presented that the District's decision was improper based on information known to it in 2019. Indeed, we "should determine the appropriateness of an IEP as of the time it was made" in our determination of whether an IEP provided a FAPE. D.S., 602 F.3d at 565. At the same time, we may "use evidence acquired subsequently to the creation of an IEP . . . to evaluate the reasonableness of the school district's decisions at the time that they were made." Id. (citation omitted). In this case, the testimony of Plaintiffs' experts concerns the reasonableness of the District's decision at the time that it made its decision and, thus it was properly considered by the Hearing Officer and we can consider it in determining whether the denial of ESY to J.H. for the summer of 2019 was reasonable. Accordingly, we deny the District's Motion to the extent it appealed the Hearing Officer's award of compensatory education for the summer of 2019, grant Plaintiffs' Motion with to the extent they seek to affirm the award, and affirm the award.

E.  The Award of Reimbursement of Private School Tuition

The District appeals the Hearing Officer's award of tuition reimbursement for The Concept School ("TCS"), the private school to which J.H.'s parents sent J.H. starting in 2021 and Plaintiffs ask us to affirm that award. The District argues that Plaintiffs' request for tuition reimbursement should be denied, or the award reduced based on equitable considerations. Specifically, the District argues that Plaintiffs failed to provide it with adequate notice and/or withheld important information from it prior to placing J.H. in a private school, and, therefore, should not be

16

reimbursed for J.H.'s private school tuition.  The Hearing Officer concluded that Parents "provided requisite notice to the District in the Fall of 2020, months before placing the Student at TCS in February 2021 and the District was provided with ample time and opportunity to . . . provide FAPE. Therefore, there is no equitable basis to reduce the tuition reimbursement award." (H.O. Dec. at 19.)

As a general matter, "Parents are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 246 (2009) (quotation omitted). "And even then courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant—for instance, if the parents failed to give the school district adequate notice of their intent to enroll the child in private school." Id. at 246-47.  Pursuant to the IDEA, "[t]he cost of reimbursement . . . may be reduced or denied . . . if . . . 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency" "that they were rejecting the placement proposed by the [school] to provide a [FAPE] to their child, including stating their concerns and their intent to enroll their child in a private school at public expense."  20 U.S.C. § 1412(a)(10)(C)(iii)(I).  Furthermore, an award of tuition may be reduced is parents fail to share an expert report or otherwise withhold information from a school district.  Council Rock Sch. Dist. v. M.W. ex rel. Marc W., Civ. A. No. 11-4824, 2012 WL 3055686, at *12 (E.D. Pa. July 26, 2012).

Here, Plaintiffs notified the District of their intent to place J.H. in a private school on October 8, 2020.  (Aja N. email, 10/8/2020 (Docket No. 15-13) at 43 of 400.)  In response, the District convened an IEP meeting, and issued a revised IEP.  (October 2020 IEP (Docket No. 15-12) at 317 of 391); H.O. Dec. at 3.)  Afterwards, Plaintiffs informed the District that they "don't

feel like [J.H.] is making progress in his current program," but they did not reiterate their intent to enroll J.H. in private school. (Aja N. Email of October 24 (Docket No. 15-13) at 45-46 of 400.) The District argues, without citing any authority in support of their argument, that we should require parents to re-iterate their intent to place a student in a private school at public expense after a school district revises the student's IEP. However, the IDEA requires only that parties provide written notice of their intent to place a student in a private school at public expense "10 business days . . . prior to the removal of the child from the public school," 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb); it does not require parents to repeat that notice if the public agency creates a new IEP. Plaintiffs provided written notice over four months before they placed J.H. in TCS. Thus, Plaintiffs complied with the regulations of the IDEA, and we deny the District's request that we reduce J.H.'s award for this reason.

The District further argues that we should reduce the award of tuition because Plaintiffs withheld information from the District during the period of time in which J.H.'s IEP was implemented. The District relies on the testimony of the Head of School of TCS, who indicated that he had received outside evaluations of J.H. prior to the end of January 2021, while the District's Director of Student Services testified that the District received those same evaluations at the end of January or in early February. (Bennett Testimony at 1027-28; Moody Testimony (Docket No. 15-6) at 1695.) However, this testimony does not establish that Plaintiffs provided the outside evaluations to TCS before the providing them to the District. Rather, the dates indicate that the District received the evaluations at approximately the same time that TCS received them. Thus, the District has provided no evidence that Plaintiffs withheld information from it, and as it also has the burden of persuasion as to this claim, Ridley Sch. Dist., 680 F.3d at 270 (citations omitted), we deny its Motion as to its argument that we should reduce J.H.'s award of

reimbursement of private school tuition, grant Plaintiffs' Motion seeking affirmance of the award, and affirm the Hearing Officer's award of reimbursement of private school tuition.[5]

## IV.    CONCLUSION

For the above stated reasons we deny the District's Motion for Judgment on the Administrative Record in its entirety and we grant Plaintiffs' Motion for Judgment on the Administrative Record in its entirety.  We find that the Hearing Officer granted J.H. compensatory education for ESY for the summer of 2020 and we affirm the Hearing Officer's decision with regard to 1) the award of compensatory education during the COVID-19 Pandemic when the District limited instruction, 2) the award of compensatory education for the time J.H. attended programs at the Technical High School, 3) the award of compensatory education for ESY during the summer of 2019, 4) the award of compensatory education for ESY for the summer of 2020, and 5) the award of reimbursement of private school tuition.  Judgment is entered in favor of Plaintiffs and against Defendant on Counts I and II of the Complaint.  Plaintiffs may submit an application for attorneys' fees and costs under the IDEA.[6]  20 U.S.C. § 1415(i)(3)(B) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs."); see also Batchelor, 759 F.3d at 272 (concluding that a court

---

[5] Plaintiffs argue that the District has waived this argument insofar as it did not raise this issue either in its answer to the complaint before the Hearing Officer or in its Answer to Plaintiffs' federal Complaint.  (See Due Process Complaint (Docket No. 15-15); Compl. at 14.)  However, we need not address this argument as we conclude that the District has not established that Plaintiffs withheld information from the District.

[6] We need not address Plaintiffs' claim for attorneys' fees and costs under the ADA and Section 504 as we found in Plaintiffs' favor on their IDEA claim.  Accord Andrew M., 490 F.3d at 350 n.11 ("The Ms also made a claim for attorney's fees under the ADA.  The District Court never reached that claim as it granted them attorney's fees based on the RA.").

may grant "such relief as [it] determines is appropriate" including attorneys' fees (alteration in original) (quotation omitted)).  An appropriate order follows.

BY THE COURT:

s/ John R. Padova

_____

John R. Padova, J.